[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 11, 2006
THOMAS K. KAHN
CLERK

No. 05-17230
Non-Argument Calendar

_____

BIA No. A97-193-802

LUZ ESTELA PARRA,
a.k.a. Luz Stella Parra,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(December 11, 2006)

Before CARNES, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Luz Estela Parra, a Colombian citizen and national proceeding pro se, petitions this Court for review of a final order of the Board of Immigration Appeals (BIA). The BIA's order affirmed an Immigration Judge's (IJ's) denial of her applications for asylum under the Immigration and Nationality Act (INA) and withholding of removal under the INA and the United Nations Convention Against Torture (CAT). 8 U.S.C. §§ 1158, 1231(b)(3)(A). Because we lack subject matter jurisdiction to review the IJ's finding that Parra did not file a timely application for asylum, we dismiss that part of her petition. And because substantial evidence supports the IJ's decision not to withhold removal, we deny that part of her petition as well.

**I.**

Parra entered the United States in September 2000 as a non-immigrant visitor authorized to remain in the United States until March 2001. She remained in the United States beyond the authorized period, and in April 2003, she filed an application for asylum under INA § 208(a) and for withholding of removal under INA § 241(b)(3) and CAT art. III.[1] In her application Parra alleged that she was threatened and persecuted in Colombia by the United Auto Defense Forces of

---

[1] Luz Parra's children, Marcela and Ricardo, were named as derivative applicants. For clarity's sake, this opinion will refer to the three applicants as "Parra," and to the extent that the children are derivative appellants, their claims for review fail for the same reasons that Luz Parra's fail.

Colombia (UAC), a group of violent paramilitaries who seek to control that country.

In her application, Parra attributed the UAC's alleged persecution to her political opinions and her membership in a particular social group. Specifically, Parra stated in her application that she had previously acted as a campaign assistant for the Liberal Party and that she had received threatening phone calls from the UAC after she refused to provide members of the group with money and food. Her application also alleges that UAC members stole food from her family's farm and, on one occasion, even shot at her house, which was located on the farm. She further alleged that the shooting incident prompted her family to sell their farm and relocate to Bogota. Parra, however, decided Bogota was not safe enough and resolved to move to the United States with her children. About two months after her family left the farm she sent her son to live with an uncle in the United States. Then, "five or six" months later, she and her daughter entered the United States legally as non-immigrant visitors. She now contends that if she or her children return to Colombia, they will "certainly" be hunted, tortured, and killed by the UAC.

In June 2003, the Immigration and Naturalization Service (INS) charged Parra with removability under INA § 237(a)(1)(B) for remaining in the United

States beyond her authorized time period. When she appeared before the IJ to answer the charge, she gave testimony that conflicted with portions of her asylum application. First, she told the IJ that she had sent her son to the United States to frustrate the UAC's attempts to recruit him, but her application made no mention of any attempted recruitment. Second, Parra told the IJ that her family vacated the farm without selling it because they would have been forced to give the sale proceeds to the UAC, but her application states that her family sold the farm. And third, in response to the IJ's questions about her political affiliations, Parra stated that although she was never a member of the Liberal Party, she had collaborated with them "once or twice" by assisting with political meetings held by the Liberal Party at the family farm, but her application states that she "belonged" to the Liberal Party and was an active campaign assistant. The IJ found her political activities "unspecific and unremarkable." In addition to the inconsistencies between Parra's testimony and her asylum application, Parra's testimony also revealed that during her eight months in Bogota she had experienced no threats or attacks from the UAC and that her parents have lived safely in Bogota since they left the farm.

The IJ denied Parra's application for asylum and withholding of removal. He found that her application for asylum was untimely and that withholding of

removal under the INA was improper because Parra had not established that it was "more likely than not" that she would be persecuted in Colombia. He also denied her request for CAT relief, finding that she had not stated a valid claim because she had not established that a government official or anyone acting under a government official's consent would torture her or her children if they were removed to Colombia. Instead, the IJ found that any hostilities directed at Parra were meant only to coerce her family into providing food or money to the UAC or to pressure Parra's son into becoming a member of the UAC. On appeal, the BIA adopted and affirmed the IJ's order.

## II.

This Court reviews de novo the BIA's legal conclusions. Mohammed v. Ashcroft, 261 F.3d 1244, 1247 (11th Cir. 2001). We review the BIA's factfindings under the substantial evidence test, which requires us to "affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Forgue v. United States Att'y Gen., 401 F.3d 1282, 1286 (11th Cir. 2002) (quoting Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001)). Under the substantial evidence test, "we review the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." Id. (quoting Adefemi v. Ashcroft, 386 F.3d 1022, 1027

5

(11th Cir. 2004) (en banc), <u>cert. denied</u>, 544 U.S. 1035, 125 S. Ct. 2245 (2005)).

The test is "highly deferential" and does not allow "re-weigh[ing] the evidence

from scratch." <u>Mazariegos v. United States Att'y Gen.</u>, 241 F.3d 1320, 1323 (11th

Cir. 2001). Under the substantial evidence test, the record must not only support

reversal, it must compel it. <u>Fahim v. United States Att'y Gen.</u>, 278 F.3d 1216,

1218 (11th Cir. 2002).

We review only the BIA's decision, except for those portions of the IJ's

decision expressly adopted by the BIA. <u>Al Najjar</u>, 257 F.3d at 1284. Here, the

BIA expressly adopted the IJ's decision that Parra failed to file a timely application

for asylum and failed to present sufficient credible evidence to carry her burdens of

proof and persuasion in support of her application for withholding of removal.

Thus, we review the IJ's findings under the substantial evidence test and will

uphold those findings unless "any reasonable adjudicator would be compelled to

conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

### III.

The IJ found that Parra's application for asylum was untimely. Parra

concedes that point, but claims that she has established "extraordinary

circumstances" that excuse her late application. In response, the government

argues that this Court lacks subject matter jurisdiction to review the timeliness of

6

Parra's application. The government is correct.

As part of the asylum application process, an alien must demonstrate "by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States." § 1158(a)(2)(B). If an alien files after the one-year deadline, his application may still be considered "if the alien demonstrates to the satisfaction of the Attorney General . . . extraordinary circumstances related to the delay in filing . . . ." § 1158(a)(2)(D). However, § 1158(a)(3) specifies that "no court shall have jurisdiction to review any determination of the Attorney General [under § 1158(a)(2)]." Mendoza v. United States Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003) (quoting § 1158(a)(3)) (alteration in original). We have held that the phrase "no court" in § 1158(a)(3) includes this Court. See id. Therefore, we lack subject matter jurisdiction to reconsider Parra's asylum application.

In addition to her application for asylum, Parra is also petitioning for withholding of removal under the INA and CAT. "An applicant for withholding of removal may satisfy her burden of proof in either of two ways." Tan, 446 F.3d at 1375. First, an applicant may prove that she experienced past persecution that was motivated, at least in part, because of her race, religion, nationality, membership in a particular social group, or political opinion. Id. Second, an applicant may

7

establish that it is "more likely than not" that she would be persecuted on account of one of those grounds if she returned to country of citizenship. Id. (citation omitted). Either way, the applicant must establish a causal connection between her political opinion and the feared persecution by presenting "specific, detailed facts showing a good reason to fear that [she] will be singled out for persecution on account of such an opinion." Al Najjar, 257 F.3d at 1287 (quotation marks and citations omitted).

Although the INA does not define "persecution," we have held that persecution is an "extreme concept" requiring "more than a few isolated incidents of verbal harassment or intimidation," and that "[m]ere harassment does not amount to persecution." Sepulveda v. United States Att'y Gen., 401 F.3d 1226, 1231 (11th Cir. 2005) (quotation marks and citation omitted). Menacing telephone threats do not rise to the level of past persecution. Id. Also, "[i]t is not enough to show that she was or will be persecuted or tortured due to her refusal to cooperate with the guerillas." Sanchez v. United States Att'y Gen., 392 F.3d 434, 438 (11th Cir 2004).

On appeal, Parra contends that the Liberal Party's occasional use of her family's farm as a political forum caused the UAC to label her as a "collaborator" with that party. According to Parra, being labeled as a collaborator is the

8

equivalent of being identified as a member of a political party or of a particular social group that opposes the UAC's goals. Accordingly, since the UAC allegedly views her as a political enemy, she contends that if she were returned to Colombia, the group would resume its alleged hostilities against her and her children. The IJ, however, discounted Parra's testimony and denied her application.

The IJ's decision is supported by substantial evidence. Parra's testimony regarding her political activities lacks the "specific, detailed facts" necessary to qualify for withholding of removal under the INA. See Al Najjar, 257 F.3d at 1287. Although Parra contends that if she were returned to Columbia the UAC would punish her for being a "collaborator" with the Liberal Party, the IJ found that her "unspecific and unremarkable" political activities did not satisfy her burden of proving that she would be persecuted because of her political opinion. On appeal Parra points to no facts that undermine the IJ's decision.

Even if we assume that she received threatening phone calls from the UAC and that she relocated to Bogota because the UAC shot at her home, there is no persuasive evidence that undermines the IJ's conclusion that the guerillas did so because they were seeking material support, and not because she had collaborated with the Liberal Party. Parra's application for asylum and her testimony to the IJ indicate that members of the UAC were upset with Parra for not complying with

9

their demands for support. However, violence and threats of violence brought on by a refusal to cooperate are not forms of political persecution that meet the burden for withholding of removal under the INA. See Sanchez, 392 F.3d at 438 ("It is not enough to show that she was or will be persecuted or tortured due to her refusal to cooperate with the guerillas."); Sepulveda, 401 F.3d at 1231 (explaining that threatening phone calls do not constitute political persecution).

Further, the IJ also noted that Parra lived peacefully in Bogota for eight months after she and her family left their rural farm. In fact, her parents still live there. We have stated that a petitioner's claim that she fears future persecution can be contradicted by the fact that she has family members who remain in the country from which he fled. Ruiz v. United States Att'y Gen., 440 F.3d 1247, 1259 (11th Cir. 2006). Thus, Parra did not meet her burden in front of the IJ to establish that she "more likely than not" would be persecuted if she were returned to Colombia.

Additionally, the IJ's finding that Parra did not qualify for CAT relief is also supported by substantial evidence. To qualify for CAT relief, Parra "must show that it is more likely than not that she will be tortured in [Colombia] at the hands of [the] government or that the government will acquiesce in the torture." Sanchez, 392 F.3d at 438. Parra has presented no evidence that she faces torture from anyone acting on behalf of the Colombian government. Thus, her claim for

10

relief under CAT also fails.

Because substantial evidence supports the IJ's decision, Parra's petition for withholding of removal is denied.

**PETITION DISMISSED IN PART, DENIED IN PART.**